OPINION
In this case, Derric Ritchie appeals from his conviction and sentence on two counts of contributing to the delinquency of a minor. The charges against Ritchie arose from a search and seizure which occurred after the police were dispatched to Ritchie's house on a loud noise complaint. Originally, Ritchie pled not guilty, and filed a motion to suppress, claiming that the search was unlawful. After hearing evidence, the trial court found that Ritchie had compromised his own privacy. As a result, the court overruled the motion to suppress. Ritchie then changed his plea to no contest and was sentenced to sixty days in jail on each count. Ritchie now appeals, contending in a single assignment of error that "[t]he trial court erred as a matter of law [in] allowing into evidence the fruits obtained as a result of the unlawful search in violation of the Appellant's rights under the Fourth Amendment of the United States Constitution and Article I, Section 14 of the Ohio Constitution."
After reviewing the record and the applicable case law, we think the issue is close. Nonetheless, upon consideration, we agree with the trial court that Ritchie failed to exhibit a reasonable expectation of privacy. Accordingly, the assignment of error is overruled. An explanation of our opinion follows, beginning with applicable standards for deciding motions to suppress.
 I
When we review rulings on motions to suppress, we accept the trial court's factual findings if "they are supported by competent, credible evidence." State v. Retherford (1994), 93 Ohio App.3d 586, 592. After accepting these facts as true, we independently decide "as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." Id. (citations omitted).
As a preliminary point, we note that the facts in the present case were largely undisputed. According to the testimony, Officer Cantrell of the Piqua Police Department was dispatched to 312 Fourth St. (Ritchie's house), at around 12:30 a.m., on August 22, 1999, to investigate a loud noise complaint. Photographs of the scene indicate that Ritchie's house had both a front porch and a side deck. The front porch was accessed by a small sidewalk which was connected to the main sidewalk on Fourth Street. No sidewalk or path led to the deck; instead, it was separated from the main sidewalk by twelve to fifteen feet of grass. The deck was accessed by steps and an opening at the top of the steps. Additionally, a door opened from the house onto the deck and a window was located to the right of the door, close to the steps. When Cantrell arrived at Ritchie's house, he did not park on Fourth Street and walk up to the front door. Rather, Cantrell and another officer parked in an alley behind the house. The officers then walked toward the back of Ritchie's house. They did not approach the house directly because Ritchie's back yard was enclosed by a fence. Instead, they walked through a neighbor's yard, and then cut over to the deck at the point where the fence ended. Before Cantrell reached the deck, he was able to hear music coming from Ritchie's house. In fact, he could hear the music when he got to a grassy area near the alley, i.e., at a point 70-80 feet away from the house.
Cantrell candidly admitted that he parked in the alley so he could approach unannounced. He testified that the officers were looking for violations because they had received numerous similar calls about the same address. However, Cantrell also said that for safety reasons, cars are not to be parked in front of houses, even on minor misdemeanor complaints, unless it is absolutely necessary.
In any event, when Cantrell reached the side of the house, a light was on in the window facing the deck. The window had clear glass and open horizontal Venetian blinds, and Cantrell could see some people at a dining room table. Cantrell went up on the deck and listened to the people talking. Subsequently, he saw drug paraphernalia, a pipe, and a baggie containing a substance which appeared to be marijuana. When he saw these items, he was a few inches from the window. At that point, Cantrell's supervisor was called. After the supervisor arrived, he and another officer went to the front door, while Cantrell stayed on the deck to see what would happen when the officers knocked on the door. When the police knocked, the baggie and pipe were placed on a bookcase behind the table.
Cantrell then entered the house from the front. At that time, he told Ritchie that he had seen his behavior. Cantrell also told Ritchie that he would secure the house and wait for a warrant unless Ritchie gave him the marijuana and pipe. As a result, Ritchie turned over the pipe and marijuana. Ritchie was subsequently cited for contributing to the delinquency of a minor.
The specific facts supporting the delinquency charges were not discussed at the suppression hearing. However, the transcript of the plea hearing indicates that the police officers saw Ritchie produce a baggie containing a substance that was later determined to be marijuana. They overheard Ritchie and others talking about "packing a bowl and taking hits from it." And finally, the officers saw two minors, aged 17 and 16, actually smoking the marijuana from the bowl.
According to Ritchie, the above facts show that he had a reasonable expectation to privacy. Consequently, Ritchie contends that the trial court erred in failing to consider the warrantless nature of the search.
The threshold question is whether the police conduct amounted to a search or seizure. Under Fourth Amendment law, " `[a] "search" occurs when an expectation of privacy that society is prepared to consider reasonable is infringed.' " State ex rel. Rear Door Bookstore v. TenthDist. Ct. of Appeals (1992), 63 Ohio St.3d 354, 364, quoting UnitedStates v. Jacobsen (1984), 466 U.S. 109, 113, 104 S.Ct. 1652, 1656,80 L. Ed.2d 85, 94. To decide if an individual has a constitutionally protected reasonable expectation of privacy, courts consider: 1) whether the individual displayed a subjective expectation of privacy in the object of the challenged search; and 2) whether society is willing to recognize the particular expectation as reasonable. California v.Ciraolo (1986), 476 U.S. 207, 211, 106 S.Ct. 1809, 1811, 90 L.Ed.2d 210,215. In this regard, the United States Supreme Court has stressed that " `[w]hat a person knowingly exposes to the public, even in his own home, is not a subject of Fourth Amendment protection.' " Id. at 213,106 S.Ct. at 1813, quoting Katz v. United States (1967), 389 U.S. 347, 351,88 S.Ct. 507, 511, 19 Led.2d 576.
Typically, a reasonable expectation of privacy does not exist where illegal activities are conducted in places which can be viewed by persons passing by or using normal routes to enter or leave a home. See,e.g., State v. Taylor (1978), 61 Ohio App.2d 209 (finding no expectation of privacy where apartment window overlooked semi-public walkway and had no curtains or other obstructions to view). However, the fact patterns of the cases differ and even small distinctions can affect the outcome. For example, in State v Huff (June 10, 1999), Highland App. No. 98 CA 23, unreported, three police officers responded to a domestic violence complaint, but the first officer on the scene did not hear anything at the suspected house. Id. at p. 3. He did, however, hear a large commotion coming from the house next door. Subsequently, all three officers stood on a gravel driveway between the two houses, and saw through an open kitchen door and window that a number of young people were drinking beer. When the officers knocked on the door and announced that they were from the police department, several youngsters ran to the front of the house. The defendant was arrested and was later convicted of underage drinking.
In deciding whether the conviction should be upheld, the appellate court indicated that any expectation of privacy was negated because the illegal activity was clearly visible from several open windows. Id. at p. 4. Additionally, the court noted that the officers were privileged to enter private property to investigate a report of crime. Id.
Therefore, the court did not find that an illegal search had occurred. On the other hand, the court did eventually reverse the conviction because the officers made a warrantless entry without exigent circumstances. Id. at 5-6.
Similarly, in State v. Staton (Mar. 15, 1999), Greene App. No. 90-CA-62, unreported, we agreed with the trial court that no reasonable expectation of privacy existed where police officers could stand on neighboring property and see marijuana growing in the defendant's yard.Id. at p. 2. Again, however, while the officers' initial actions were appropriate, their subsequent actions were not. As in Huff, the officers in Staton improperly entered the defendant's property and seized marijuana plants without first obtaining a warrant. Id. at 3. In this particular instance, we affirmed the conviction because the officers' observations alone supported a finding of guilt. Id.
In State v. Israel (Sept. 26, 1997), Hamilton App. No. C-961006, unreported, police went to a residence to confirm the identity of an individual who had been arrested. The address was known to police, as a large drug raid had previously occurred there. When the officers knocked on the front door, they heard "scurrying" noises, but no one answered the door. They then went up a few steps and onto a small deck to knock on the side door. At that time, through the glass door, they saw a large amount of marijuana in plain view on the kitchen table. Id
at p. 1. The officers then obtained a search warrant before entering the premises.
Under these circumstances, the First District Court of Appeals found that the officers did not conduct an illegal search. In particular, the court noted that the side door was visible from the street and was directly accessible. Because many homes use side doors as the main point of ingress and egress, the court felt the officers acted reasonably in going to the side door. Id. at 3. The court also commented that it did not need to reach the "plain view" exception to searches and seizures because the officers did not enter the house after seeing the marijuana. Instead, they obtained a warrant. Id. at 4.
In contrast, in State v. Tanner (Mar. 10, 1995), Ross App. No. 94 CA 2006, unreported, police officers visited the defendant's property after receiving an anonymous report that he was growing marijuana. Instead of approaching the front door, the officers walked around the property and found a marijuana plant growing in a basket. They also walked to a garden area north of the house and found marijuana plants growing in row of corn next to a privacy fence. Then, they set up surveillance and entered the property to take photos and videotapes, all without getting a search or arrest warrant. Id. at p. 1. Eventually, the officers confronted the defendant with the surveillance results, told him things would "go easier" for him if he cooperated, and obtained his consent to a search. Id.
On appeal, the Fourth District Court of Appeals held that the defendant had an expectation of privacy because the area where the marijuana grew was within the curtilage. Id. at pp. 3-4. The Fourth District also found that the "plain view" doctrine could not legitimize the search because the officers had not lawfully put themselves in a place where they could see the marijuana. Id. at 3. Specifically, instead of going to the front door of the house, they went to the rear door, which was not used by persons approaching the house. Id.
Accordingly, the Fourth District sustained the trial court's decision granting the defendant's motion to suppress.
In circumstances quite similar to the present, the California Supreme Court found that a defendant exhibited a subjective expectation of privacy when the police looked into the side window of his home. Peoplev. Comacho, 2000 WL 1030340, No. 8075720 (Sup.Ct. Cal., July 27, 2000), ___ Cal. Rptr.2d ___, ___ P.3d ___. As in the present case, the police in Comacho responded to a late night complaint of loud noise. However, when they arrived, they did not hear excessive noise. They also did not knock on the front door. Instead, one officer remained at the front while the other walked into the side yard, where he came upon a large side window. The window was open a few inches and had no blind. However, the room was lit by a red light bulb and the officer was able to see a man. Further, while the officer could hear music, it was not loud. At that point, the officer returned to the front of the house and reported that he was unsure if a crime was being committed. Consequently, both officers went back to the side window, where they saw a man manipulating clear baggies. They also saw baggies with white powder on the bed and dresser. After calling for backup, the officers entered the window and arrested the defendant.
In finding that the defendant had a subjective expectation of privacy, the California Supreme Court observed that the defendant "did not expect people to be intruding onto his private property at 11:00 p.m. and looking into his windows." Id. at p. 5. The court then considered whether the defendant's expectation was also objectively reasonable. In this regard, the court focused on the fact that
 "a resident of a house [may] rely justifiably upon the privacy of the surrounding areas as a protection from the peering of the officer unless such residence is `exposed' to that intrusion by the existence of public pathways or other invitations to the public to enter upon the property."
 Id. at 6 (citation omitted) (parenthetical material in original). Specifically, while the large window was completely uncovered and allowed people in the side yard to easily view the unlawful activity, the officers' observations were not made from a place where the public was expressly or impliedly invited. Id. at 6-8. Accordingly, the California Supreme Court found that a search occurred, and that it was unlawful because none of the exceptions to the warrant requirement were asserted. Id. at 8.
As we mentioned, decisions in these cases often depend on slight factual differences. The distinction we find most relevant in the present case is that the public was impliedly invited to enter Ritchie's side deck. Certainly, Ritchie may have subjectively expected that the police would not peer into a side window of his home late at night (although playing loud music somewhat lessens the force of such an expectation). However, Ritchie's expectation was not objectively reasonable because the side deck and door were visible and open to the street. Specifically, occupants of the house could reasonably expect others to enter by the side door. Moreover, the lack of a direct sidewalk or path to the deck is irrelevant, since these items would be evidence of an express, rather than an implied, invitation to enter.
As we said earlier, we do think the decision in this case is close. In particular, we are troubled by the idea of police sneaking around citizens' homes and peering in windows late at night. We do think the police must have some freedom to investigate complaints of unlawful activity, and to choose, for safety reasons, how they should best approach homes where such activity may be afoot. However, the outer limits may have been reached in this case, where the police verified the loud noise complaint before coming close to the house, and where nothing indicated even a remote threat to safety. Instead, the officers were simply investigating a minor misdemeanor complaint. They also candidly admitted that they were searching for evidence of other violations. Despite these facts, we are compelled to agree with the trial court that Ritchie compromised his own privacy by conducting illegal activities in the open, where he could reasonably expect the public to enter.
Based on the preceding discussion, we find that a "search" did not occur when the police observed Ritchie's activities through the side window of the house. Accordingly, the trial court did not err by denying the motion to suppress on this basis. We do stress that our decision should not be interpreted as a license for police to engage in improper surreptitious behavior.
 In the same vein, we are somewhat concerned by the actions of the officers after Cantrell's supervisor came to the scene. As we mentioned, Officer Cantrell waited on the deck while the other officers knocked on the front door. Cantrell then entered the house and "persuaded" Ritchie to give up the evidence by threatening to get a warrant. " `A "seizure" of property occurs where there is some meaningful interference with an individual's possessory interests in that property.' " Bridges v. Butch
(1997), 122 Ohio App.3d 572, 578-79 (citation omitted).
"Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, * * * [the basic rule has been repeatedly stated and enforced] that the police may not enter and make a warrantless seizure.
State v. Howard (1991), 75 Ohio App.3d 760, 773 (citation omitted).
In the present case, the officers' observations furnished probable cause for a warrant. No exigent circumstances existed, and the officers could easily have secured the house while a warrant was obtained. However, instead of following constitutionally mandated procedures, Officer Cantrell took a "shortcut" and obtained the evidence by threatening to get a warrant.
As we mentioned earlier, even if a defendant abandons privacy expectations, a later warrantless search or seizure may still provide a basis for reversing the conviction. See Huff, supra, at pp. 5-6. Therefore, by acting without a warrant, Officer Cantrell risked a later challenge to the entry and the seizure of evidence. Notably, however, Ritchie did not contest this particular matter in the trial court. He also did not raise it on appeal. Nevertheless, we may consider the issue of the warrantless seizure if it involves plain error, i.e., error which is apparent on the face of the record and is prejudicial to the defendant. State v. Eiding (1978), 57 Ohio App.2d 111, 119-20, andState v. Plump (Oct. 8, 1992), Montgomery App. No. 12974, unreported, p 3.
Plain error has been defined as "obvious error which is prejudicial to an accused, although neither objected to nor affirmatively waived, which, if allowed to stand, would have a substantial adverse impact on the integrity of and public confidence in judicial proceedings." State v.Craft (1977), 52 Ohio App.2d 1. We notice plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
Keeping these principles in mind, we find that the trial court erred in failing to consider the effect of the warrantless seizure of the pipe and marijuana. However, the error was not prejudicial, because Ritchie voluntarily turned over the evidence. Although Ritchie did so only after Cantrell threatened to get a warrant, that fact does not invalidate the consent. In this regard, we have refused to find coercion where a law enforcement agent tells a suspect that a warrant can be obtained if the suspect refuses to consent to a search. State v. Berg (Oct. 4, 1996), Montgomery App. No. 15313, unreported, p. 3. An important qualification is that the advice must be well-founded. In other words, grounds for a warrant must actually exist. Id. In Berg, we explained that:
 [t]his proposition rests upon the conclusion that the "threat" does not involve any deceit or trickery; but instead accurately informs the individual of his precise legal situation. * * * But this means that under the better view the police act at their peril in threatening to obtain a search warrant. It is not enough that their interest was made in good faith expectation that a warrant would issue, there must be probable cause.
 Id. (citations omitted).
As we said, what Officer Cantrell saw and heard while on the deck furnished probable cause for a warrant. Therefore, Cantrell did not deceive Ritchie when he told him he could obtain a warrant. By the same token, we must again stress that police officers "act at their peril" when they bypass established warrant procedures. Officers are obviously free to choose the most expedient route to an arrest. However, they should also realize that their own actions can destroy the validity of the arrest and prevent conviction.
In light of the preceding discussion, we find no error that was prejudicial to the defendant. Accordingly, the single assignment of error is overruled and the judgment of the trial court is affirmed.
 _____________________ BROGAN, J.
FAIN, J., concurs.
KERNS, J., concurs in judgment only.
(Honorable Joseph D. Kerns, Retired from the Court of Appeals, Second Appellate District Sitting By Assignment of the Chief Justice of the Supreme Court of Ohio).