OPINION
Appellant Michelle Huffman appeals the verdict rendered, in the Tuscarawas County Court of Common Pleas, in favor of the Bureau of Workers' Compensation ("Bureau"). The following facts give rise to this appeal.
On November 26, 1976, appellant twisted her right knee while working for Glastic Corporation. Prior to this injury, appellant was very active in sports, including: softball, track and field and volleyball. The Bureau allowed a workers' compensation claim for aggravation of pre-existing arthritis of the right knee. In December 1976, appellant had surgery on her right knee. This was the first of five surgeries appellant had on her right knee from 1976 to 1988. In 1996, the Bureau subsequently amended appellant's industrial claim to include degenerative disc disease in her low back.
Following her surgery in 1976, appellant attended Bible College until 1981 and thereafter, graduated from Kent State University, in 1993, with a degree in psychology. In February 1997, appellant sought psychological counseling with David Oeschger, Ph.D. Dr. Oeschger diagnosed appellant as suffering from various degrees of depression ranging from major depression recurrent to dysthymia. Appellant believes the industrial injury took her away from everything she loves. Dr. Oeschger found that her major depression is the direct and proximate result of the industrial injury she suffered in November 1976.
Based on this diagnosis, appellant filed a claim with the Bureau seeking to include her diagnosis of major depression with the claims previously allowed by the Bureau. The Bureau refused to allow this claim and appellant appealed the denial to the trial court on April 30, 1998. During discovery, the Bureau requested medical records from appellant's psychologist, Dr. Oeschger. Appellant responded by requesting an incamera inspection of the records, by the trial court, prior to complying with the Bureau's request. The medical records contain an elaborate history of sexual, physical and emotional abuse as well as drug abuse. The trial court conducted a hearing on the release of the medical records on May 14, 1999. On May 27, 1999, the trial court filed a judgment entry finding the Bureau entitled to possession of the medical records and ordering counsel for the Bureau to keep the medical records confidential.
On June 22, 1999, the trial court sua sponte scheduled this matter for trial on September 23, 1999. Counsel for the Bureau requested a continuance of the trial date because he had a previously scheduled trial in Mercer County Common Pleas Court. The trial court again sua sponte
rescheduled this matter for trial on November 4, 1999. On September 10, 1999, the Bureau filed a motion requesting that its expert, Dr. Howard, be permitted to review appellant's medical records prior to testifying at his deposition. The trial court granted the Bureau's request on October 25, 1999.
Counsel for the Bureau deposed Dr. Howard on October 7, 1999. Counsel requested a continuance of the trial date in order to again depose Dr. Howard on November 11, 1999. The trial court overruled the motion for continuance and this matter proceeded to trial on November 4, 1999. During the trial court's opening remarks and instructions to the jury, the judge explained the procedure that would be followed for the jury's questioning of witnesses. Prior to opening statements, counsel for the Bureau objected to the procedure. The trial court overruled the objection. Following deliberations, the jury returned a verdict, in favor of the Bureau, finding appellant's depression was not related to the injury she suffered at work.
Appellant timely filed a notice of appeal and sets forth the following assignments of error for our consideration:
 I. THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT IN ALLOWING EXPERT OPINION TESTIMONY BY A NON-TESTIFYING WITNESS REGARDING THE ULTIMATE ISSUE FOR TRIAL.
 II. THE TRIAL COURT ERRED IN ALLOWING DR. HOWARD'S EXPERT OPINION TESTIMONY REGARDING APPELLANT'S HISTORY OF PHYSICAL AND SEXUAL ABUSE AND ADMITTING SUCH EVIDENCE.
 III. THE TRIAL COURT ERRED IN REQUIRING TESTIMONY FROM COUNSEL AND ALLOWING JURORS TO CONDUCT ORAL EXAMINATION.
 IV. THE JURY'S DECISION IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.
 III
Appellant's Third Assignment of Error is dispositive of this matter on appeal. Appellant contends, in this assignment of error, that the trial court erred when it required testimony from counsel and permitted jurors to ask questions of the witnesses. I agree.
This Court previously addressed this issue in the case of State v.Mascarella (July 6, 1995), Tuscarawas App. No. 94 AP 100075, unreported. The jurors in Mascarella were permitted to ask questions of witnesses in the same manner as the jurors in the case sub judice. That is, after the attorneys completed the questioning of a witness, the jury was permitted to directly ask questions of the witness. If the trial court determined a particular question could not be answered by a witness under the Rules of Evidence, the court would explain its reasoning to the jury. Tr. Vol. I at 73-74.
Counsel for the Bureau objected to the above procedure. Id. at 89. The trial court responded as follows:
 * * * I have not been told by a Court of Appeals or Supreme Court that this process is reversible error. I will point out to you that the Court of Appeals has suggested, at least one panel, has suggested that it should be as other courts allow — in writing, filtered through the Judge with lawyers having the right to object on each question. I simply disagree with them on that respectfully and again have not been told in any case that that's reversible error. Id. at 91.
I disagree with the trial court's interpretation of our decision inMascarella. This court specifically found error in the manner the jurors asked questions of the witnesses, however, we determined it did not rise to the level of plain error. Mascarella at 17, 19. We found the procedure utilized by the trial court unacceptable because it placed the jurors in the position of advocates for certain pieces of information. Id. at 16. We also found that "[t]rial counsel who had sought to portray themselves [as] friendly, folksy attorneys in voir dire become the objecting party to a juror's search for the truth." Id.
In the matter currently before the court, appellant cites to a question asked by a juror that resulted in questions being asked of counsel. Specifically, a juror asked:
 MS. PHILLIPS: I don't know you'll (sic) be able to answer or not. I am not really understanding what her purpose is for — through Workers (sic) Compensation. Her claims aren't taken care of?
* * *
 THE COURT: * * * I would like either Mr. Plymale or Mr. Thomakos to tell you, Ms. Phillips and the others, what claims from 1976 to the present date have been granted by the Worker (sic) Compensation stemming from that knee injury. Mr. Thomakos?
MR. THOMAKOS: I'm not sure I understand the question.
 THE COURT: What allowed claims have been granted by the Bureau of Worker (sic) Compensation?
MR. THOMAKOS: Over and above this one.
THE COURT: That are related to the `76 injury.
* * *
 MR. THOMAKOS: The allowed claims are the chondromalacia.
* * *
 MR. THOMAKOS: Certainly the second claim is the degenerative problems in her right knee which you know, the arthritis problems.
THE COURT: She's been granted compensation for that.
MR. THOMAKOS: Yes and —
JUROR: Since 1988?
MR. THOMAKOS: No, this is from 1976.
 THE COURT: It may have been awarded later and — the money may have come later, Ms. Phillips, but it's all relating back to the `76 injury.
 MR. THOMAKOS: And Judge, that's why I was caught off by —
 THE COURT: Let's not confuse it. Tell the lady what claim stemming from `76 injury had been allowed. That's the question.
 MR. THOMAKOS: Oh, okay. I can do that. Tr. Vol. II at 248-251.
Appellant claims the above exchange made counsel appear as if he were trying to confuse the facts by the statement of the trial court judge: "Let's not confuse it." Id. at 251. I agree that the trial court erred when it permitted the jurors to ask questions directly to the witnesses and find that the trial court's comment to appellant's counsel made it appear as if he were attempting to confuse the issues for the jury. However, the record indicates that appellant's counsel did not, at any time, object to the jurors asking questions of the witnesses. Thus, the Bureau argues we should analyze this issue under a plain error analysis.
Implementation of the plain error doctrine is to be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. Reichert v. Ingersoll (1985), 18 Ohio St.3d 220,223; State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. The plain error doctrine permits correction of judicial proceedings where error is clearly apparent on the face of the record and is prejudicial to the appellant. Reichart at 223. See, also, State v.Eiding (1978), 57 Ohio App.2d 111. Although the plain error doctrine is a principle applied almost exclusively in criminal cases, the Ohio Supreme Court has stated that the doctrine may also be applied in civil causes, if the error complained of "would have a material adverse affect on the character and public confidence in judicial proceedings." Reichart at 223, citing Schade v. Carnegie Body Co. (1982), 70 Ohio St.2d 207, 209;Yungwirth v. McAvoy (1972), 32 Ohio St.2d 285, 288.
Based on my review of the record, I find that it is not necessary to analyze this issue under a plain error analysis. Counsel for the Bureau objected to the juror questioning procedure and the trial court overruled the objection. Thus, appellant's counsel did not also have to raise the same objection as it would have been a vain act.
In the Mascarella case, we explained the procedure a trial court should follow in allowing jurors to question witnesses. The jurors should write down their proposed questions. Counsel for both parties and the trial court judge should review the questions for objections, on the record, outside the hearing of the jury. Once juror questions are approved by the trial court, the clerk or bailiff should read the questions to the witness. "Although the procedure is cumbersome, it insures that no negative impression is given to the jury from objections and argument."Mascarella at 17.
Accordingly, I conclude the trial court erred when it permitted the jurors to ask questions in the manner that it did in the case subjudice. This error necessitates a new trial.
Appellant's Third Assignment of Error is sustained. I will not address appellant's First, Second, or Fourth Assignments of Error as they are moot based upon the disposition of appellant's Third Assignment of Error.
For the foregoing reasons, the judgment of the Court of Common Pleas, Tuscarawas County, Ohio, is hereby reversed and remanded for proceedings consistent with this opinion.
Wise, J., Hoffman, J., concurs separately. Gwin, P.J., dissents.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Tuscarawas County, Ohio, is reversed and remanded for further procedures consistent with this opinion.
 _________________________ WILLIAM B. HOFFMAN, JUDGE