JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Richard Taylor, appeals from the judgment of the Cuyahoga County Common Pleas Court, rendered after a jury verdict, finding him guilty of assault, intimidation and telecommunications harassment, and sentencing him to three years incarceration. We find no merit to appellant's appeal and affirm.
 PROCEDURAL AND FACTUAL BACKGROUND {¶ 2} In the Fall of 2002, the Cuyahoga County Grand Jury indicted appellant on five counts: felonious assault, intimidation, burglary, vandalism, and telecommunications harassment. The events charged in the indictment stemmed from appellant's conduct toward his ex-girlfriend, Maya Anthony, in May and June 2002, as their relationship was ending.
 {¶ 3} At trial, Maya Anthony testified that she met appellant, a former boxer, on the bus in July 2001. In September 2001, after several telephone conversations, he moved in with her. Their relationship ended in the Spring of 2002 after Anthony found pictures of another woman in appellant's car and told appellant he should move out. According to Anthony, appellant moved his things out of the house and returned her keys.
 {¶ 4} Anthony testified that on May 27, 2002, she telephoned her mother and told her that she suspected that appellant had stolen some of her clothing. According to Anthony, as she was talking to her mother, appellant suddenly walked into her bedroom and said, "Bitch, I didn't steal your clothes; stop saying that." When appellant pulled the telephone cord out of the wall, Anthony threw the phone at him, hitting appellant in the head. According to Anthony, appellant then swung at her, hitting her left ear, and then left the room.
 {¶ 5} Anthony went downstairs and learned that her 14-year-old son had called the police when he heard the commotion. After borrowing a neighbor's phone, Anthony called her father, who told her that her mother was on her way over. As Anthony was speaking with her father, the lights in her house went out.
 {¶ 6} The police arrived shortly thereafter. Upon inspecting the fusebox in the basement, they discovered that several fuses had been unscrewed. When they screwed the fuses back in, the lights in Anthony's house came back on.
 {¶ 7} At the hospital later that evening, Anthony received five stitches in her ear. The day after the incident, Anthony filed a complaint with the police and obtained a temporary protection order against appellant. She and her children also moved in temporarily with her parents.
 {¶ 8} According to Anthony, on June 1, 2002, she, her father, her children and several neighbors were standing in the backyard of her parents' home when appellant backed his car into the driveway, got out of the car and began yelling at her. Anthony ran into the house. From the door, she saw her father and appellant arguing and heard appellant threatening her father.
 {¶ 9} According to Anthony, when she opened the door for her father to come into the house, appellant barged in and yelled at her that she "needed to go downtown and drop the charges and [she was] the cause of his mother having heart failure and a heart attack." When Anthony told appellant that she did not cause the heart attack, appellant punched her in the stomach and then hit her in the face. He then left the house, got in his car and drove away.
 {¶ 10} Anthony testified that appellant telephoned her parents' house repeatedly after this incident. According to Anthony, she hung up on appellant several times and on another occasion, her father told appellant that she did not wish to speak to him.
 {¶ 11} Anthony testified further that on June 9, 2002, she discovered that her home had been broken into. The front door to her home had been kicked in and her stereo, television set, and several other items had been stolen. In addition, many of Anthony's clothes and several family photographs had been slashed with a box cutter.
 {¶ 12} Anthony testified that during her relationship with appellant, she and appellant often communicated with each other via e-mail. Appellant had shown Anthony his web page, known as EPHESIANSMAN@BlackPlanet.com, and had shown Anthony how to set up her own web page. Anthony testified that on June 14, 2002, she retrieved an e-mail from appellant that read:
 {¶ 13} "This is that nigga that you love to hate. What you call me a menace to society, you've seen nothing yet. I know my life is over and my children and family has to suffer because you allowed your friends and family to push you into doing this bullshit. So I feel that your children and family should suffer just like mine. All of this could've been avoided if you would've continued being the woman that you once were. So keep your eye on your six. Believe me I've been here every day waiting, I know how to get you and hurt you and its not doing nothing to you, I want you to hurt for the rest of your life, and remember me for the rest of your life."
 {¶ 14} Jermaine Whiteside, Anthony's 14-year-old son, testified that he was home on May 27, 2002 when appellant entered Anthony's home. He saw appellant go upstairs to Anthony's bedroom and then "heard a lot of hollering." Jermaine went to a neighbor's house to call the police after he saw his mother's bleeding ear.
 {¶ 15} Jermaine testified that he and others were in the backyard at his grandparents' house on June 1, 2002 when appellant got out of his car "and was screaming and cussing and saying something about his mom." Jermaine testified that he heard appellant "saying something about his mom had a heart attack or had died or something; he was going to kill everybody. He said he was going to kill us."
 {¶ 16} Henry Ray Whiteside, Anthony's father, testified that he, Anthony's children and several neighbors were in his backyard on the evening of June 1, 2002, when appellant "came up cursing, talking all loud." Whiteside testified that after he told appellant several times to stop cursing, appellant "said he would kill, you know, me, my wife, the kids, and my daughter." Whiteside went into his house to call the police. He then heard Anthony say that appellant had hit her and saw appellant run down the driveway, get in his car and leave.
 {¶ 17} Martha Ann Whiteside, Anthony's mother, testified that she was on the phone with Anthony on May 27, 2002 when she heard appellant call her daughter a bitch. When the phone went dead, she got in her car and drove to Anthony's house, where she found her daughter bleeding from her ear. After the police arrived and took a report, Martha Ann took Anthony to the hospital.
 {¶ 18} Martha Ann testified that when she returned home that evening, she received a telephone call from appellant, who told her, "So I guess you went to the police on me too. I'm going back to jail because of your daughter."
 {¶ 19} Martha Ann testified that Anthony ran into the house screaming on June 1, 2002, when she saw appellant appear in the backyard. According to Martha Ann, appellant told Maya that "she better go downtown and drop the charges."
 {¶ 20} Several nights after this incident, appellant called the Whiteside home and spoke with Martha Ann. He asked her, "Why you and your husband keep looking out the back window," and then told her, "Your daughter's going to die when she step foot out of that house, I'm going to cut her throat and she die." Martha Ann testified that during this conversation, appellant repeatedly told her that he was going back to jail because of Anthony.
 {¶ 21} Cleveland Police Detective Reginald Wimbley testified that he interviewed Anthony and Whiteside on June 2, 2002. He testified further that in August 2002, Anthony delivered to him a copy of a threatening e-mail she had received on June 14, 2002 (State's Exhibit 7) and a copy of two pages from appellant's website (State's Exhibit 8). Wimbley testified further that although Anthony retrieved the e-mail from appellant on June 14, 2002, it was actually e-mailed on June 2, 2002.
 {¶ 22} At the close of the State's case-in-chief, the trial court granted appellant's Crim.R. 29 motion in part. It dismissed counts three and four, burglary and vandalism, and amended the telecommunications harassment charge.
 {¶ 23} The jury subsequently found appellant guilty of assault, intimidation and telecommunications harassment. The trial court sentenced appellant to three years incarceration on the intimidation conviction, and six months incarceration on each of the assault and telecommunications harassment convictions, the sentences to be served concurrently.
 {¶ 24} Timely appealing, appellant raises five assignments of error for our review.
 FIRST ASSIGNMENT OF ERROR {¶ 25} In his first assignment of error, appellant contends that the trial court erred in denying his Crim.R. 14 motion to sever the intimidation and telecommunications harassment counts for trial. Appellant contends that he was prejudiced by the joinder of these counts because the jury could have considered evidence of one crime as indicative that he committed another unrelated crime merely because the crimes involved the same victim. In short, appellant contends that the jury heard "other acts" evidence that would have been inadmissible had the counts been severed.
 {¶ 26} Crim.R. 8(A) permits the joinder of offenses, as follows:
 {¶ 27} "Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Joinder is liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to the witnesses. See Statev. Torres (1981), 66 Ohio St.2d 340, 343; 2 LaFave Israel, Criminal Procedure (1984) 354-355, Section 17.1.
 {¶ 28} Here, while the five charged offenses were not the same, they were part of a course of criminal conduct against Anthony and her family that involved appellant's attempts to intimidate Anthony into dropping the charges against him. Therefore, they were properly joined in the same indictment under Crim.R. 8(A).
 {¶ 29} If similar offenses are properly joined pursuant to Crim.R. 8(A), a defendant may still move to sever the charges pursuant to Crim.R. 14 if their consolidation will prejudice his or her rights. "If it appears that a defendant or the state is prejudiced by a joinder of offenses * * *, the court shall order an election or separate trial of counts * * * or provide such other relief as justice requires." Crim.R. 14.
 {¶ 30} "To prevail on his or her claim that the trial court erred in denying his motion to sever, the defendant has the burden of demonstrating three things. He must affirmatively demonstrate 1) that his rights were prejudiced, 2) that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial, and 3) that given the information provided to the court, it abused its discretion in refusing to separate the charges for trial." State v. Schaim (1992), 65 Ohio St.3d 51, 59.
 {¶ 31} We begin with an analysis of whether appellant was prejudiced by the joinder of the offenses at trial. When a defendant claims that he was prejudiced by the joinder of multiple offenses, a court must determine 1) whether evidence of the other crimes would be admissible even if the counts were severed, and 2) if not, whether the evidence of each crime is simple and distinct. Id., citing State v.Hamblin (1988), 37 Ohio St.3d 153, 158-159; Drew v. United States
(C.A.D.C. 1964), 331 F.2d 85. "If the evidence of other crimes would be admissible at separate trials, any `prejudice that might result from the jury's hearing the evidence of the other crime in a joint trial would be no different from that possible in separate trials,' and a court need not inquire further." Id., citing Drew, supra at 90; United States v. Riley
(C.A. 8, 1986), 530 F.2d 767. Accordingly, we must determine the extent to which evidence of each of these crimes would be admissible in other trials if the counts were severed as requested by appellant.
 {¶ 32} R.C. 2945.59 provides that:
 {¶ 33} "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."
 {¶ 34} Similarly, Evid.R. 404(B) provides that:
 {¶ 35} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 36} Appellant was indicted for incidents occurring between May 27, 2002 and June 11, 2002. On May 27, 2002, appellant assaulted Anthony at her home. On June 1, 2002, after Anthony had filed a complaint against him, he demanded that she drop the charges, threatened to kill her, her father, her mother, and her children, and then assaulted her again. He subsequently called her parents' home, stating that he would have to go back to prison because Anthony had filed charges against him, and again threatened harm to Anthony.
 {¶ 37} In light of these facts, it is apparent that even if the intimidation and telecommunications harassment charges had been severed for trial, evidence of appellant's other acts would have been admissible at those trials to prove appellant's motive and intent regarding the offenses. Evidence of appellant's May 27, 2002 assault on Anthony and her subsequent filing of charges against appellant is clearly relevant to his intent on June 1, 2002 to intimidate Anthony into dropping the charges. Furthermore, evidence of appellant's assaults on Anthony on May 27, 2002 and June 1, 2002 is inextricably related to the telecommunications harassment charge, as it explains appellant's motive for repeatedly calling and threatening Anthony and her family — he wanted her to drop the charges regarding the May 27, 2002 assault so he would not have to go back to prison.
 {¶ 38} It is evident that joinder of the offenses for trial did not allow the jury to consider other acts evidence that would otherwise have been inadmissible if the charges had been severed for trial. Accordingly, appellant has failed to demonstrate any prejudice in the joinder of these counts for trial.
 {¶ 39} Appellant's first assignment of error is therefore overruled.
 SECOND ASSIGNMENT OF ERROR {¶ 40} In his second assignment of error, appellant contends that the trial court erred in admitting State's Exhibit 7, a copy of the threatening e-mail from appellant that Anthony retrieved on June 14, 2002, and State's Exhibit 8, a copy of several pages from appellant's website, which demonstrated that the e-mail came from appellant. Appellant argues that the trial court erred because the exhibits post-date the intimidation charge (June 1, 2002) and the dates of the telecommunications harassment (June 2-June 11, 2002). The trial court admitted the exhibits pursuant to Evid.R. 404(B), which, as noted above, provides for the admission of evidence of other crimes, wrongs, or acts to demonstrate motive or intent.
 {¶ 41} "While most cases addressing other acts evidence admitted pursuant to Evid.R. 404(B) involve prior crimes or acts of misconduct, it is clear that evidence of subsequent crimes or acts of misconduct is admissible if it is relevant to an issue at trial and its probative value is not outweighed by its prejudicial effect." (Emphasis added.) Clevelandv. Dillingham (May 11, 1995), Cuyahoga App. No. 67693, citing State v.Thompson (1981), 66 Ohio St.2d 496.
 {¶ 42} Here, the trial court did not abuse its discretion in admitting the threatening e-mail from appellant and the pages from appellant's website because they are relevant to appellant's intent regarding the intimidation and telecommunications harassment charges.
 {¶ 43} Initially, we note that the testimony of Detective Wimbley established that although Anthony did not retrieve the e-mail until June 14, 2002, appellant sent the e-mail on June 2, 2002, one day after he assaulted Anthony and threatened to kill her, her father and mother, and her children. Thus, the e-mail was not so remote in time as to be irrelevant to either the intimidation count or the telephone harassment count.
 {¶ 44} Moreover, contrary to appellant's argument, his motive and intent in appearing at the Whiteside home on June 1, 2002 and in making repeated telephone calls to the Whiteside home were disputed at trial. Defense counsel argued during closing argument that appellant went to the Whiteside home on June 1, 2002 because he was upset about his mother and wanted to apologize to Anthony and talk to her. He argued further that appellant's subsequent telephone calls to Anthony and her parents were merely the innocent attempts of an emotionally distraught man to reconcile with her. Therefore, appellant's threatening e-mail, sent the day after he assaulted Anthony and told her to drop the charges against him, was relevant to appellant's claimed defense of innocent intent.
 {¶ 45} Finally, we find this evidence to be more probative than prejudicial. See Evid.R. 403; State v. Harcourt (1988), 46 Ohio App.3d 52. (In balancing the probative value against the danger of unfair prejudice, the trial court is vested with broad discretion, and an appellate court should not interfere absent a clear abuse of discretion.)
 {¶ 46} In light of the foregoing, appellant's second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR {¶ 47} In his third assignment of error, appellant contends that the evidence was insufficient to support his conviction for intimidation.
 {¶ 48} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. State v. Thompkins (1997),78 Ohio St.3d 380, 390. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The weight and credibility of the evidence are left to the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 49} R.C. 2921.01, which defines the offense of intimidation, provides that:
 {¶ 50} "(A) No person shall knowingly attempt to intimidate or hinder the victim or a crime in the filing or prosecution of criminal charges or a witness involved in a criminal action or proceeding in the discharge of the duties of the witness.
 {¶ 51} "(B) No person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges or an attorney or witness involved in a criminal action or proceeding in the discharge of the duties of the attorney or witness."
 {¶ 52} Appellant contends that because he was indicted for intimidation relating to the events of June 1, 2002, the State should not have been allowed to prove the intimidation charge by evidence of telephone calls made to the Whiteside home after that date. Appellant also contends that without evidence of the telephone calls, the evidence regarding the events of June 1, 2002, was insufficient to support a conviction for intimidation. According to appellant, Anthony testified that appellant came to her parents' home because he was upset about his mother's heart attack. Appellant also contends that his threat of harm to Anthony was merely in response to Whiteside's request that he stop cursing. Finally, appellant contends that the State's failure to charge him with assault for the events of June 1, 2002 indicates that the State failed to connect Anthony's injuries with an attempt to intimidate her. Appellant's arguments are without merit.
 {¶ 53} First, the testimony regarding the events of June 1, 2002, was sufficient, without reference to appellant's subsequent telephone calls, to demonstrate that on June 1, 2002, appellant tried to intimidate Anthony into dropping the charges against him. The evidence presented at trial, if believed, established that after appellant assaulted her on May 27, 2002, Anthony filed a criminal complaint and obtained a temporary protection order against appellant. Three days later, appellant appeared uninvited at the home of Anthony's parents. Yelling and cursing, he told Anthony that she needed to drop the charges against him because her filing had caused his mother to have a heart attack. When Anthony told appellant that she was not the cause of his mother's heart attack, appellant punched her in the stomach and the mouth. This evidence is sufficient to support the jury's finding that on June 1, 2002, appellant knowingly and by force attempted to intimidate Anthony into dropping the charges against him.
 {¶ 54} Because the evidence of the events of June 1, 2002, standing alone, was sufficient to support appellant's conviction for intimidation, appellant's argument that the State impermissibly proved the intimidation charge by evidence of his subsequent threatening telephone calls fails. Moreover, the fact that the State did not charge appellant with assault for his actions on June 1, 2002, does not somehow imply that her injuries on that date were not related to appellant's attempt to intimidate her.
 {¶ 55} Appellant's third assignment of error is overruled.
 FOURTH ASSIGNMENT OF ERROR {¶ 56} Appellant also contends that his convictions for intimidation and telephone harassment are against the manifest weight of the evidence.
 {¶ 57} A manifest weight of the evidence argument involves detemining whether there exists a greater amount of credible evidence offered in a trial to support one side of the issue rather than the other. Thompkins, 78 Ohio St.3d at 387. Weight is not a matter of mathematics, but depends on its effect in inducing belief. Id.
 {¶ 58} When reviewing a claim that the judgment in a criminal case is against the manifest weight of the evidence, this court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins, supra, citing State v.Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 59} Appellant contends that his conviction for intimidation was against the weight of the evidence because "the record fails to establish any acts or threats by [him] to intimidate Ms. Anthony from testifying as a witness in this case."
 {¶ 60} We disagree. The events of June 1, 2002, as recited above, demonstrate that appellant told Anthony that "she better go downtown and drop the charges" because she had caused his mother to have a heart attack, and when Anthony indicated that she was not the cause of the heart attack, appellant hit her — once in the stomach and once in the face. In light of this evidence, the jury could have reasonably concluded that appellant's actions were designed to threaten Anthony and intimidate her into dropping the charges against him.
 {¶ 61} Appellant contends that his conviction for telecommunications harassment was against the manifest weight of the evidence because there was no evidence that he intended to harass anyone at the Whiteside residence, no one told him to stop calling, and he stopped calling after three or four times.
 {¶ 62} The testimony, however, does not support appellant's arguments. Martha Ann testified that during one of the telephone calls, appellant told her that "your daughter's going to die when she step foot out of that house, I'm going to cut her throat and she die" — an obviously threatening statement. Furthermore, Maya Anthony testified that she hung up on appellant several times when he called and her father told him at least once that she did not wish to speak to him. Anthony also testified that appellant continued to call even though she did not want to talk to him.
 {¶ 63} In light of this testimony, it cannot be said that the jury lost its way and created such a miscarriage of justice that appellant's conviction for telecommunications harassment must be reversed. The jury could have reasonably concluded from this evidence that appellant knowingly made telephone calls to the Whiteside residence "with purpose to abuse, threaten, or harass another person." R.C. 2917.21.
 {¶ 64} Appellant's fourth assignment of error is therefore overruled.
 FIFTH ASSIGNMENT OF ERROR {¶ 65} In his fifth assignment of error, appellant contends that his sentence must be vacated and the matter remanded for a new sentencing hearing because the trial court failed to notify him at the time of sentencing, as required by R.C. 2967.28, that he would be subject to a term of post-release control.
 {¶ 66} In Woods v. Telb, 89 Ohio St.3d 504, 2000-Ohio-171, the Ohio Supreme Court upheld the constitutionality of the post-release control statutes, and held that "pursuant to R.C. 2967.289(B) and (C), a trial court must inform the offender at sentencing or at the time of a plea hearing that post-release control is part of the offender's sentence." In light of this holding, this court has held that the trial court has a mandatory duty to notify a defendant at sentencing that he or she is subject to post-release control and has vacated sentences where the offender's only notification of post-release control was by way of the court's sentencing journal entry rather than being informed on the record during the sentencing hearing. See, e.g., State v. Johnson, Cuyahoga App. No. 81814, 2003-Ohio-4180, and cases cited therein.
 {¶ 67} Here, at sentencing the trial judge advised appellant:
 {¶ 68} "Here is my sentence, and I have considered everything that you have said and I have taken that to heart. Let's start with the intimidation, felony of the third degree. Three years, LCI, credit for time served. Both misdemeanors are six months, and they shall run concurrent by law. Up to five years post-release control. Costs will be waived. [The] court has considered the minimum sentence but it does not apply here. It would demean the seriousness of the offense, and he has been in prison previously." (Emphasis added.)
 {¶ 69} On this record, we hold that the trial court adequately advised appellant, as required by R.C. 2967.28, that post-release control would be part of his sentence.
 {¶ 70} Appellant's fifth assignment of error is therefore overruled.
 {¶ 71} The judgment is affirmed.
Judgment affirmed.
Patricia A. Blackmon, P.J., and James D. Sweeney, J., concur.
James D. Sweeney, retired, of the Eighth District Court of Appeals sitting by assignment.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.