JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Christopher Gooden ("Gooden") appeals his convictions and sexually oriented offender classification entered by the Cuyahoga County Court of Common Pleas after a jury found him guilty of intimidation, aggravated robbery with firearm specifications, and kidnapping with firearm specifications. For the reasons adduced below, we affirm in part, and reverse and remand in part.
 {¶ 2} The following facts adduced at trial relate to the offenses for which Gooden was convicted. The victim of the aggravated robbery and kidnapping charges was a 14-year-old eighth-grader who resided on East 113th Street in Cleveland The victim lived in a house with his brother, grandmother, aunts and cousins. The family lived next door to Gooden's cousins, the Smileys. There had been a feud between teenaged members of the families for two or three years, in which the victim had not been involved.
 {¶ 3} On May 5, 2002, the victim was standing at a bus stop on the corner of East 115th Street and Superior Avenue with two of his friends. Gooden walked up and grabbed him. The victim had known Gooden for some years from around the neighborhood.
 {¶ 4} Gooden told the victim he had to talk with him and instructed the victim to come to the back of a nearby abandoned building with him. The victim felt something hurting his side, looked down, and saw Gooden had put a black gun to the victim's side. Gooden took the victim to the back of the abandoned building. The victim testified he was scared, did not feel he could run away, and thought Gooden would shoot him or beat him if he tried to run.
 {¶ 5} Gooden asked the victim why he stole Gooden's car and took a leather jacket from the trunk, but the victim did not know what Gooden was talking about. When the victim's two friends appeared, Gooden lifted his shirt displaying the gun and told them to leave.
 {¶ 6} Gooden then told the victim "I should hit you in your head like I did your friends." Again, the victim did not know what Gooden was talking about. Gooden pulled the gun out and instructed the victim to take off his clothes. The victim took off all his clothes, except for his underwear and socks. The victim observed Gooden take a dollar and some change from a pocket in the victim's clothing. Gooden threw the victim's clothes aside and told the victim to leave.
 {¶ 7} The victim ran towards home crying and saw his sister's friend to whom he told what happened. The victim then called home and spoke to his cousin, who told him to hurry home. The victim's aunt called the police. When the police arrived, they took the victim back to the scene of the incident where his clothes were found.
 {¶ 8} On a separate occasion, about a month earlier, Priscilla Reeves ("Reeves"), one of the victim's aunts, was a witness to a homicide. Reeves lived with the victim next door to the Smileys. On April 9, 2002, Reeves witnessed a homicide to which Jimmy Smiley, Gooden's first cousin, was a suspect.
 {¶ 9} Later that day, Reeves saw Gooden, who approached her on the street. Gooden told Reeves, "I'm telling you, you better not be out running your mouth. Because if you tell anybody about what you seen going on last night, the same thing that man got last night, you're going to get it too." Reeves believed Gooden and proceeded walking as Gooden followed her. Reeves then heard a friend yell to her. Reeves turned around and saw Gooden had pulled out a black revolver and was pointing it at her. Reeves' friend yelled, "Chris, don't shoot her." Reeves then hurried across the street where there were other people she knew. Reeves gave a police statement and became a witness for the prosecution in the homicide investigation.
 {¶ 10} Gooden was separately indicted in two cases for the above incidents, CR-425741 and CR-426768. In CR-425741, Gooden was charged with aggravated robbery in violation of R.C. 2911.01
with firearm specifications, and kidnapping in violation of R.C.2905.01 with firearm specifications. In CR-426768, Gooden was charged with five counts of intimidation in violation of R.C.2921.04 and one count of felonious assault in violation of R.C.2903.11 with firearm specifications. Appellee state of Ohio filed a motion for joinder of the two cases, which was granted by the trial court.
 {¶ 11} The case proceeded to a jury trial. After the state rested its case, Gooden made a motion for acquittal. The trial court granted the motion in part, and dismissed two of the intimidation counts and the felonious assault count. The trial proceeded on the remaining counts.
 {¶ 12} The jury returned a verdict finding Gooden guilty of one count of intimidation, guilty of aggravated robbery with a firearm specification, and guilty of kidnapping with a firearm specification. The jury found Gooden not guilty of two counts of intimidation.
 {¶ 13} Prior to sentencing, Gooden filed a motion for judgment of acquittal, or in the alternative for a new trial that was denied by the trial court. The trial court proceeded to sentence Gooden to a total of six years' incarceration. The trial court also classified Gooden as a sexually oriented offender pursuant to R.C. 2950.04.
 {¶ 14} Gooden has appealed his convictions raising six assignments of error. His first assignment of error provides:
 {¶ 15} "The trial court erred in granting the state's motion for joinder."
 {¶ 16} Under Crim.R. 8(A), joinder is permitted if offenses are of the same or similar character, are based upon the same act or transaction, or are based upon two or more acts or transactions connected together or part of a common scheme or course of criminal conduct. It is well settled that the law favors joinder. State v. Waddy (1992), 63 Ohio St.3d 424, 429. As we have previously recognized, "[j]oinder is liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to the witnesses." State v. Taylor, Cuyahoga App. No. 82572, 2003-Ohio-6861. A decision to join indictments will not be reversed absent a showing that the trial court abused its discretion. Id.
 {¶ 17} Here, while the charged offenses were not the same, they were part of a course of criminal conduct against Reeves and her family. The intimidation offenses charged that Gooden committed acts of intimidation upon Reeves. Reeves was a witness to a criminal murder case in which Gooden's cousin was a suspect. The aggravated robbery and kidnapping offenses involving the juvenile victim occurred less than a month after Reeves' encounters with Gooden. Reeves and the juvenile victim were family members who resided in the same household. They lived next to Gooden's cousins, the Smileys, and the two families had a history of feuding. Thus, the charges against Gooden displayed a course of criminal conduct against Reeves and her family and were properly joined in the same indictment under Crim.R. 8(A). SeeState v. Taylor, supra.[1]
 {¶ 18} Finding no abuse of discretion, we conclude that joinder was proper, and overrule Gooden's first assignment of error.
 {¶ 19} Gooden's second assignment of error provides:
 {¶ 20} "The trial court erred in denying appellant's motion for acquittal as to the charges."
 {¶ 21} Crim.R. 29(A) governs motions for acquittal and provides for a judgment of acquittal "if the evidence is insufficient to sustain a conviction * * *." The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. A verdict will not be disturbed on appeal unless reasonable minds could not reach the conclusion reached by the trier of fact. Id. In essence, sufficiency is a test of adequacy.State v. Thompkins, 78 Ohio St.3d 380, 386-387, 1997-Ohio-52. A reviewing court is to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id.
 {¶ 22} Gooden argues that there was insufficient evidence to sustain his convictions for aggravated robbery and kidnapping with firearm specifications because the state failed to prove that a "deadly weapon" or "firearm" was used.
 {¶ 23} R.C. 2911.01, the aggravated robbery statute, provides in relevant part:
"(A) No person, in attempting or committing a theft offense * * *or in fleeing immediately after the attempt or offense, shalldo any of the following:
 "(1) Have a deadly weapon on or about the offender's person orunder the offender's control and either display the weapon,brandish it, indicate that the offender possesses it, or use it;
"* * * "
 {¶ 24} R.C. 2923.11 defines "deadly weapon" and "firearm" as follows:
"(A) `Deadly weapon' means any instrument, device, or thingcapable of inflicting death, and designed or specifically adaptedfor use as a weapon, or possessed, carried, or used as a weapon.
 "(B)(1) `Firearm' means any deadly weapon capable of expellingor propelling one or more projectiles by the action of anexplosive or combustible propellant. `Firearm' includes anunloaded firearm, and any firearm that is inoperable but that canreadily be rendered operable.
 "(2) When determining whether a firearm is capable ofexpelling or propelling one or more projectiles by the action ofan explosive or combustible propellant, the trier of fact mayrely upon circumstantial evidence, including, but not limited to,the representations and actions of the individual exercisingcontrol over the firearm."
 {¶ 25} R.C. 2905.01, the kidnapping statute, provides in relevant part:
"(A) No person, by force, threat, or deception, * * * shallremove another from the place where the other person is found orrestrain the liberty of the other person, for any of thefollowing purposes:
"* * *
"(3) To terrorize, or to inflict serious physical harm on thevictim or another;
"* * * "
 {¶ 26} With respect to the firearm specification, R.C.2941.145 provides, in relevant part:
"(A) Imposition of a three-year mandatory prison term upon anoffender * * * is precluded unless the indictment, count in theindictment, or information charging the offense specifies thatthe offender had a firearm on or about the offender's person orunder the offender's control while committing the offense anddisplayed the firearm, brandished the firearm, indicated that theoffender possessed the firearm, or used it to facilitate theoffense."
 {¶ 27} The juvenile victim clearly testified to Gooden's use of a firearm. The victim testified he felt the gun at his side and saw the black tip of the gun. Gooden took the victim to the back of an abandoned building. The victim testified he was scared, did not feel he could run away, and thought Gooden would shoot him or beat him if he tried to run. The victim also testified Gooden displayed the gun to his friends and pulled the gun out when instructing the victim to remove his clothing. Additionally, the victim testified that Gooden took a dollar and some change from a pocket in the victim's clothing. Viewing this evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of aggravated robbery and kidnapping were proven beyond a reasonable doubt.
 {¶ 28} The crux of Gooden's argument is that the state failed to provide any testimony that the incident of May 5, 2002 with the victim involved a "firearm" or weapon capable of inflicting death. Gooden relies upon the Ohio Supreme Court's decision inState v. Murphy (1990), 49 Ohio St.3d 206, in which the court held that "[t]he state must present evidence beyond a reasonable doubt that a firearm was operable at the time of the offense."
 {¶ 29} In Murphy, the court considered the type of evidence necessary to meet this burden of proof. Id. The court found that evidence to meet the burden of proof could include the testimony of lay witnesses who were in a position to observe the instrument and the circumstances surrounding the crime. Id. at syllabus. In support of its holding, the court stated:
"In enacting [the firearm specification] statute thelegislature wanted to send a message to the criminal world: ` Ifyou use a firearm you will get an extra three years ofincarceration. `That is why it chose the word `firearm,' insteadof simply `deadly weapon,' which can include all types of lethalinstruments. The foregoing definition includes loaded as well asunloaded guns. It also includes operable guns, as well asinoperable guns that can readily be rendered operable. Hence, itis only reasonable that the state can rely upon all thesurrounding facts and circumstances in establishing whether afirearm was used in the commission of a felony."
 {¶ 30} Id. at 208.[2]
 {¶ 31} The Ohio Supreme Court refined the manner by which the state may prove a firearm specification in State v. Thompkins
(1997), 78 Ohio St.3d 380, where the court stated as follows:
"[A] firearm penalty-enhancement specification can be provenbeyond a reasonable doubt by circumstantial evidence. Indetermining whether an individual was in possession of a firearmand whether the firearm was operable or capable of being readilyrendered operable at the time of the offense, the trier of factmay consider all relevant facts and circumstances surrounding thecrime, which include any implicit threat made by the individualin control of the firearm."
 {¶ 32} Id. at 385. Thus, where an individual brandishes a gun and implicitly, but not expressly, threatens to discharge the firearm at the time of the offense, the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable or capable of being readily rendered operable. Id. at 384. As the court later recognized, "Thompkins clarifies that actions alone, without verbal threats, may be sufficient circumstances to establish the operability of a firearm." Statev. Reynolds (1997), 79 Ohio St.3d 158, 162 fn. 3 (noting circumstantial evidence of two masked men waving guns stating that they are committing a robbery was sufficient to sustain a conviction for a firearm specification.)
 {¶ 33} In this case, operability of the weapon may be inferred from the facts and circumstances. The victim testified Gooden placed the gun into his side and instructed him to go to the back of the building. When the victim's friends appeared, Gooden displayed the gun and told them to leave. Gooden also pulled out the gun and instructed the victim to remove his clothing and proceeded to take money therefrom. Under these facts and circumstances, it was reasonable for the trier of fact to conclude that Gooden's words and actions were meant to imply that his gun was, in fact, operable. Also, the evidence in this case was clearly sufficient for the jury to find Gooden possessed and displayed a deadly weapon for purposes of the charges for which he was convicted.
 {¶ 34} Given the evidence, and viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, we conclude any rational trier of fact could have found all the essential elements of the offenses beyond a reasonable doubt. Thus, Gooden's aggravated robbery and kidnapping convictions with firearm specifications are sustained by sufficient evidence.
 {¶ 35} Gooden also claims there was insufficient evidence to sustain his conviction for intimidation. R.C. 2921.04 provides in relevant part:
"(B) No person, knowingly and by force or by unlawful threatof harm to any person or property, shall attempt to influence,intimidate, or hinder * * * [a] witness involved in a criminalaction or proceeding in the discharge of the duties of the * * *witness."
 {¶ 36} Gooden argues there was no criminal case pending, there was a lack of credible evidence, and he had an alibi to the alleged incident on April 9, 2002 with Reeves.
 {¶ 37} It has previously been recognized that it is not necessary for a criminal proceeding to be pending in order to sustain a conviction for intimidation under R.C. 2921.04. Statev. Hummell (Jun. 1, 1998), Morrow App. No. CA-851. It is sufficient that the threat be clearly aimed at discouraging a witness from having any involvement in a forthcoming criminal action. Id. In this case, Gooden told Reeves, "I'm telling you, you better not be out running your mouth. Because if you tell anybody about what you seen going on last night, the same thing that man got last night, you're going to get it too." Gooden was attempting to prevent Reeves from discharging her duties as a witness to a criminal act. We find the evidence was legally sufficient to permit the charge to go to the jury.
 {¶ 38} Insofar as Gooden challenges the credibility of Reeves' testimony and claims to have had an alibi, our review is not whether the state's evidence is to be believed, but whether, if believed, the evidence against Gooden would support a conviction. Here, the testimony of Reeves, if believed, was sufficient to sustain a conviction for intimidation.
 {¶ 39} Gooden's second assignment of error is overruled.
 {¶ 40} Gooden's third assignment of error provides:
 {¶ 41} "Appellant's convictions are against the manifest weight of the evidence."
 {¶ 42} In reviewing a claim challenging the manifest weight of the evidence, we are directed as follows: "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. The power to reverse a judgment of conviction as against the manifest weight must be exercised with caution and in only the rare case in which the evidence weighs heavily against the conviction.State v. Martin, 20 Ohio App.3d at 175.
 {¶ 43} Gooden argues that the jury simply lost its way because there was no requisite evidence for the convictions in this case. We do not agree. As discussed above, there was ample evidence presented at trial to support Gooden's convictions. After reviewing the record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we are not persuaded that the jury clearly lost its way and created such a manifest miscarriage of justice such that Gooden's conviction must be reversed and a new trial ordered. Gooden's third assignment of error is overruled.
 {¶ 44} Gooden's fourth assignment of error provides:
 {¶ 45} "Appellant was denied a fair trial due to prosecutorial misconduct."
 {¶ 46} In this assignment of error, Gooden cites several comments made by the prosecutor during trial and closing argument that he argues were prosecutorial misconduct unfairly prejudicing his right to a fair trial. The test for prosecutorial misconduct is whether the remarks are improper and, if so, whether they prejudicially affected substantial rights of the defendant.State v. Lott (1991), 51 Ohio St.3d 160, 165.
 {¶ 47} Gooden first argues the prosecutor improperly commented on Gooden's failure to testify. Specifically, after Detective Williams made an isolated remark that Gooden did not want to make a statement after he had been arrested, the following colloquy took place:
"Q: When someone, a defendant refuses to give you a statement,can you still go ahead and talk to him?
 "A: No, I do not.
 "Q: Why not?
 "A: Because he has a right not to talk to me."
 {¶ 48} We note initially that this line of questioning occurred after defense counsel cross-examined the detective about his failure to follow up with certain witnesses in his investigation and failure to obtain evidence corroborating the victim's statement. Defense counsel had also inquired as to the detectives' efforts to contact Gooden. With respect to the prosecutor's line of questioning, the prosecutor did not directly comment about Gooden's silence or failure to testify, but rather asked about police procedure and a defendant's right to remain silent in the context of a police investigation.
 {¶ 49} Since Gooden failed to object to the testimony about which he now complains, he has waived all but plain error. Statev. Slagle (1992), 65 Ohio St.3d 597. "Plain error does not exist unless it can be said that, but for the error, the outcome of the trial would clearly have been otherwise." State v. Moreland
(1990), 50 Ohio St.3d 58.
 {¶ 50} Gooden argues that admission into evidence of a defendant's post-arrest silence constitutes plain error. In support of this argument, Gooden relies upon Doyle v. Ohio
(1976), 426 U.S. 610; State v. Williams (1979),64 Ohio App.2d 271; and State v. Eiding (1978), 57 Ohio App.2d 111.
 {¶ 51} In Doyle, 426 U.S. 610, the United States Supreme Court dealt with the issue of the right to cross-examine a defendant who had provided exculpatory testimony at trial about his post-arrest silence for the limited purpose of impeachment. Id. Although the state argued that evidence of post-arrest silence was for impeachment purposes, as opposed to evidence of guilt, the Court was concerned that evidence implying an inconsistency with the defendant's exculpatory testimony might be construed by the jury as evidence of guilt. Id. As the Court stated, "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." Id. at 618. Therefore, the Court held use for impeachment purposes of a defendant's silence, at the time of arrest and after receiving Miranda warnings, violated the Due Process Clause of theFourteenth Amendment. Id. at 619.
 {¶ 52} In Eiding, 57 Ohio App.2d 111, our court considered a similar issue where, on cross-examination of the defendant, the state inquired why the defendant had not told the police about his alibi at the time of his arrest. The defendant responded that he had never been interviewed by the police. Id. In rebuttal, a detective on the case testified the defendant refused to make a statement to the police after his arrest and did not tell the police about his alibi. Id. This court found that admitting evidence of the defendant's post-arrest silence at trial and relying on it as a basis of guilt, denied him due process of law. Id.
 {¶ 53} In Williams, 64 Ohio App.2d 276, this court held that "[a]ny comment which infers that the defendant is guilty because he remained silent subverts the guarantees afforded him by the Fifth Amendment to the Constitution of the United States." The prosecutor in Williams had elicited testimony that the officer had informed the defendant of his right to remain silent, but that only one of the four persons arrested in connection with the offense provided a statement. Id. This court found the testimony was impermissible, stating "[p]rosecutors should avoid any suggestion that the accused is guilty because he refused to give a statement to police." Id.
 {¶ 54} Our review of the above cases reflects that admitting evidence of post-arrest silence in a manner that implicitly suggests a defendant's guilt is impermissible. As recognized by this court, "the Miranda decision precludes the substantive use of a defendant's silence during police interrogation to prove his guilt." State v. Correa (May 15, 1997), Cuyahoga App. No. 70744, quoting State v. Sabbah (1982), 13 Ohio App.3d 124. However, as the Ohio Supreme Court has recognized, "where evidence has been improperly admitted in derogation of a criminal defendant's constitutional rights, the admission is harmless `beyond a reasonable doubt' if the remaining evidence alone comprises `overwhelming' proof of defendant's guilt." State v.Williams (1983), 6 Ohio St.3d 281, citing Harrington v.California (1969), 395 U.S. 250, 254.
 {¶ 55} We find that in determining whether the prosecutor's conduct and admission of the post-arrest silence evidence was harmless, this court must consider the extent of the comments, whether an inference of guilt from silence was stressed to the jury, and the extent of other evidence suggesting Gooden's guilt.State v. Thomas, Hamilton App. No. C-010724, 2002-Ohio-7333. A review of the comments in this case reflects that they were isolated remarks. See State v. Ervin, Cuyahoga App. No. 80473, 2002-Ohio-4093; State v. Kelly (July 12, 2001), Cuyahoga App. No. 78422 (both recognizing isolated reference to post-arrest silence is not reversible error). Further, the context in which the evidence was introduced reveals it was an inquiry only into the course of the police investigation of the incident and police procedure, rather than an insinuation of Gooden's guilt. Also, the remaining evidence presented, as discussed under earlier assignments of error, comprised overwhelming proof of Gooden's guilt, and we cannot say that, but for the error, the outcome of the trial would clearly have been otherwise.
 {¶ 56} Gooden also argues that the prosecutor in closing argument improperly referred to defense counsel's strategy as a "smoke screen" on three occasions. The first "smoke screen" reference was raised with respect to a line of questioning by defense counsel that questioned the lack of investigation of the clothing, including the sizing, and perhaps suggested the recovered clothing did not belong to the victim. The second and third "smoke screen" references were in relation to defense counsel's references to what the state did not produce.
 {¶ 57} We find none of the remarks complained of rise to the level of suggesting defense counsel had fashioned lies and suborned perjury as found in the cases relied upon by Gooden,State v. Smith (1984), 14 Ohio St.3d 13; and State v. Braxton
(1995), 102 Ohio St.3d 28. The "smoke screen" remarks related to defense counsel's emphasis on the state's lack of evidence. They were no more than a commentary on the evidence and did not undermine the fairness of the proceedings against Gooden or prejudice his ability to have a fair trial. Under these circumstances, not only do we find that the prosecutor's comments were not improper, but also, we find that the "smoke screen" comments did not prejudicially affect substantial rights of the defendant. Gooden's fourth assignment of error is overruled.
 {¶ 58} Gooden's fifth assignment of error provides:
 {¶ 59} "Appellant was denied effective assistance of counsel as guaranteed by Section 11, Article VIII, of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution when counsel failed to object to the prosecutor's questioning and remarks regarding appellant's post-arrest silence and when counsel failed to object to the prosecutor's closing arguments."
 {¶ 60} To prove "ineffective assistance of counsel," Gooden must show that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to deprive him of a fair trial. Strickland v. Washington (1984), 466 U.S. 668,687. To warrant reversal, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." State v. Bradley (1989),42 Ohio St.3d 136, paragraph three of the syllabus, citing Strickland,466 U.S. at 694. Judicial scrutiny of a lawyer's performance must be highly deferential. State v. Sallie (1998),81 Ohio St.3d 673, 674.
 {¶ 61} As noted above, Gooden has failed to show that his counsel's performance was substandard, or that the outcome of the trial would have been different but for his counsel's performance.
 {¶ 62} Gooden's fifth assignment of error is overruled.
 {¶ 63} Gooden's sixth assignment of error provides:
 {¶ 64} "The trial court erred by improperly concluding that appellant should be classified as a sexually oriented offender."
 {¶ 65} As relevant to this case, the applicable version of R.C. 2950.01(D)(1) defines a "sexually oriented offense" as including a violation of R.C. 2905.01, kidnapping, when the victim is a minor under the age of eighteen. In this case, Gooden was convicted of kidnapping a fourteen-year-old in violation of R.C. 2905.01. However, he argues that there was absolutely no evidence in this case that the kidnapping was committed with the purpose to gratify his sexual needs or desires.
 {¶ 66} We recognize that the trial court applied the statute as written, which did not require anything more than the kidnapping of a minor. The Second District Court of Appeals has held that applying the statutory requirement that an individual be classified as a sexually oriented offender, where the offenses were committed without any sexual motivation or purpose, "is unreasonable and arbitrary, and bears no rational relationship to the purposes of the statute." State v. Barksdale, Montgomery App. 19294, 2003-Ohio-43, appeal allowed, 99 Ohio St.3d 1434,2003-Ohio-2902, and cause dismissed, 99 Ohio St.3d 1549,2003-Ohio-4781; and State v. Reine, Montgomery App. No. 19157, 2003-Ohio-50, appeal allowed, 99 Ohio St.3d 1434, 2003-Ohio-2902, and cause dismissed, 99 Ohio St.3d 1549, 2003-Ohio-4781. The Second District found that such an application of the statute offends the Due Process Clauses of both the Ohio and United States Constitutions. Barksdale, supra; Reine,
supra.[3]
 {¶ 67} We agree with the Second District and find that application of the statutory requirement that Gooden be classified as a sexually oriented offender, in a case in which there was no evidence that the offense was committed with any sexual motivation or purpose, is unreasonable and arbitrary, bears no rational relationship to the purposes of the statute, and, thus, offends the Due Process Clauses of both the Ohio and United States Constitutions.
 {¶ 68} Gooden's sixth assignment of error is sustained. The order of the trial court designating Gooden to be a sexually oriented offender, and imposing upon him the registration and reporting requirements appropriate to that designation, is to be vacated by the trial court upon remand
 {¶ 69} Judgment affirmed in part and reversed and remanded in part.
Kilbane, P.J., and Karpinski, J., concur.
This cause is affirmed in part, reversed in part and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that appellant and appellee share the costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] A defendant may file a Crim.R. 14 motion to sever if he can establish prejudice to his rights. State v. Taylor, supra. Gooden did not file a motion to sever in this case and has not demonstrated his rights were prejudiced by a joinder of these offenses for trial.
[2] Contrary to defense counsel's position at oral argument,Murphy does not require use of the term "firearm" or "deadly weapon" to establish operability for circumstantial evidence. Id. In Murphy, the circumstances included a gun being wrapped in a shirt and a description of the weapon from eyewitnesses. Id. In this case the victim testified Gooden put the gun into his side, displayed the gun to his friends, and pulled the weapon on him. The victim also gave a description of the weapon.
[3] The Ohio legislature amended R.C. 2950.01, effective January 1, 2004, limiting the definition of a "sexually oriented offense" under R.C. 2950.01(D)(1) to a violation of R.C.2905.01(A)(4), which is kidnapping with the purpose of engaging in sexual activity.