OPINION
{¶ 1} Defendant-appellant, Shane Ridley, appeals from two June 16, 2003 judgment entries of the Franklin County Court of Common Pleas. In case No. 02CR-1916, appellant was found guilty of receiving stolen property and burglary. Appellant was sentenced to an aggregate term of five years. In case No. 03CR-743, appellant was found guilty of receiving stolen property and sentenced to 12 months incarceration. The trial court ordered appellant to serve his sentences consecutive to each other. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} On April 8, 2002, appellant was indicted in case No. 02CR-1916 on one count of receiving stolen property, a felony of the fourth degree, and one count of burglary, a felony of the second degree. On February 10, 2003, appellant was indicted in case No. 03CR-743 on three counts of receiving stolen property, felonies of the fourth degree. By entry dated February 27, 2003, the trial court granted appellee the State of Ohio's motion to join the two cases for purposes of trial. On May 19 and 20, 2003, a jury was duly impaneled and sworn. Trial on appellant's consolidated cases started on May 20, 2003. The following testimony was elicited during the trial.
 {¶ 3} During the evening hours of January 25, 2002, and the early morning hours of January 26, 2002, a series of automobile thefts took place close in proximity to each other. A 1990 Chevrolet full size conversion van, a 1988 four door Buick LaSabre, a Dodge Caravan mini van, and a 1986 Pontiac Grand Prix were stolen. Blood evidence was collected from the Dodge Caravan off of the driver's side dashboard, left of the steering wheel.
 {¶ 4} Also, on the evening of January 25, Troy Donahue's ("Donahue") apartment was burglarized.[1] Found at the scene of the burglary, was a bloody towel as well as blood on the wall of the bedroom closet.
 {¶ 5} Keith Farley, a childhood friend of appellant's, testified for the State. Farley testified that appellant admitted to him that he stole several vehicles. Farley was present and witnessed appellant jump into the Pontiac Grad Prix and drive off. Farley testified that appellant drove the car to the apartment complex in which appellant lived, and parked it there. (Tr. 124.) Appellant later had the Pontiac towed to his grandmother's house. (Tr. 128.) Farley also saw the Buick and Dodge Caravan parked in appellant's apartment complex. Farley testified that when appellant observed officers towing the Buick and Dodge, appellant said "`Oh, man, I'm going to prison * * * [t]he cops got the cars.'" (Tr. 126-127.)
 {¶ 6} Farley also testified that appellant admitted that he, along with Bobby Newsome ("Newsome") and Leon Owens ("Owens"), broke into Donahue's apartment and stole money, drugs, a television and some speakers. Farley testified that appellant cut his finger inside of Donahue's apartment and used a towel. (Tr. 128-129.)
 {¶ 7} Jamie Fugate ("Fugate"), a friend and former girlfriend of Donahue testified that on January 25, 2002 between 9:00 and 9:30 p.m., she picked Donahue up from his apartment and they headed to the Billiard Club ("the Club"). Fugate testified that after they were at the Club for about two hours, she observed Donahue walk outside to speak to Owens. Fugate testified that Donahue never returned to the Club. (Tr. 156.) Fugate testified that after she could not find Donahue, she left the Club between 12:30 and 12:45 a.m., to try and find him. Fugate went back to Donahue's apartment and as she walked up the stairs, she noticed that the front door to his apartment had been kicked in. (Tr. 159.) Fugate entered the apartment. She testified that it was ransacked and she noticed a television, a DVD player, and stereo accessories missing from the apartment.
 {¶ 8} Thomas Burton worked for the Columbus Police Department as a detective in the Crime Scene Search Unit. Detective Burton was called to Donahue's apartment to take photographs, to collect latent fingerprints and to collect evidence. Detective Burton testified that he lifted 117 latent fingerprints, collected a blood sample from the bedroom closet, a wicker container taken from the kitchen countertop, and a white towel with suspected blood evidence. (Tr. 178, 184-185.)
 {¶ 9} Mark Henson, Crime Scene Detective for the Columbus Police Department, collected a blood sample from the dash on the driver's side, left of the steering wheel off of the Dodge Caravan.
 {¶ 10} Detective Robert Viduya testified that appellant was picked up by patrol officers and brought to the detective bureau. (Tr. 236.) Appellant requested to speak with an attorney, but when Detective Viduya asked appellant if he would consent to a DNA sample without a search warrant, appellant consented. (Tr. 237.) Detective Viduya swabbed the inside of appellant's cheeks with sterile Q-tips. The sample was submitted to the crime lab for analysis. Appellant never objected to Detective Viduya swabbing the inside of his mouth. (Tr. 238-239.)
 {¶ 11} Raman Tejwani, a Criminalist with the Columbus Police Crime Lab, compared the DNA sample taken from appellant to the blood samples taken from the white towel, Donahue's bedroom closet, the Dodge Caravan and a sample taken from Donahue. The criminalist concluded that the DNA obtained from the blood on the towel, the blood on the swabs from the bedroom closet and Dodge Caravan, match the DNA types obtained from the sample taken from appellant. (Tr. 247.)
 {¶ 12} Appellant did not testify. The State rested its cases on May 22, 2003. On May 23, 2003, the jury announced they had reached a verdict. Appellant was found guilty in case No. 02CR-1916, of receiving stolen property, the 1986 Pontiac Grand Prix, and guilty of burglary. In case No. 03CR-743, the jury found appellant not guilty of count one, receiving stolen property, the 1990 Chevrolet full size conversion van, and guilty as to count two, receiving stolen property, the Dodge Caravan mini van. Upon application by the State, the trial court dismissed count two of the indictment, receiving stolen property, the 1988 Buick LaSabre. Appellant was sentenced to an aggregate term of six years incarceration. It is from these consolidated cases and judgment entries dated June 16, 2003 that appellant appeals, assigning the following as error:
First Assignment of Error
The trial court erred by permitting the admission of evidence of a homicide investigation in which the defendant-appellant was clearly a suspect when such evidence did not qualify for admission under Rule 404(b), Ohio Rules of evidence.
Second Assignment of Error
The trial court erred by answering a jury question, and by affirmatively inquiring into the status of deliberations, without consultation with the parties or their counsel, and outside the presence of the parties or their counsel.
Third Assignment of Error
Defendant-appellant was denied the effective assistance of counsel for counsel's failure to accept the offer of a stipulation which would have avoided the jury knowing that his client was a suspect in an uncharged homicide.
Fourth assignment of error the trial court erred in permitting the introduction of evidence that defendant-appellant had requested to speak to an attorney rather than answer detectives' questions.
Fifth Assignment of Error
Defendant-appellant was denied the effective assistance of counsel for counsel's failure to object to evidence that his client had requested an attorney rather than answer detectives' questions.
Sixth Assignment of Error
The trial court erred by overruling the motion of defendant-appellant for acquittal pursuant to Rule 29(a), Ohio Rules of criminal procedure, on the charge of burglary.
 {¶ 13} In his first assignment of error, appellant contends that the trial court erred in allowing the State to present prejudicial testimony that suggested appellant was a suspect in Donahue's murder. Appellant cites to three instances during trial where prejudicial testimony was presented to the jury: (1) Detective Patricia Dailey's reference to "a homicide investigation" (Tr. 96); (2) Fugate's testimony that she never saw Donahue again after he left the Club because "he died that night" (Tr. 169); and (3) Detective's Viduya's reference to "the investigator in charge of [appellant's] current case" (Tr. 236). Appellant maintains that since the State failed to admit the testimony under Evid.R. 404(B), 403(A) bars the testimony. Evid.R. 403(A) provides:
Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
 {¶ 14} Appellant avers that he was unfairly prejudiced because the jury was led to believe that he was charged with property offenses as well as being tied to a murder that occurred the same evening. Appellant also argues that this irrelevant testimony confuses the issues and is misleading to the jury as the mention of the murder investigation leads the jury to wonder whether appellant was involved in Donahue's death. Appellant's reliance on Evid.R. 403(A) is misplaced.
 {¶ 15} Trial courts have broad discretion in the admission of evidence. This court will not disturb the decision of the trial court absent an abuse of discretion and appellant has been materially prejudiced. State v. Maurer (1984), 15 Ohio St.3d 239, 265. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 16} When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Ponsv. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621. Moreover, a new trial should not be granted unless the accused was prejudiced or may have been prejudiced by the evidence improperly admitted. R.C. 2945.83(C).
 {¶ 17} At the onset, we note that appellant failed to object to the allegedly prejudicial testimony of Fugate and Detective Viduya. "A claimed error not objected to will not be noticed on appeal unless it rises to the level of plain error." State v. Bock (1984),16 Ohio App.3d 146, 150. To constitute plain error, the error must be obvious on the record, palpable, and fundamental such that it should have been apparent to the trial court without objection. See State v. Tichon
(1995), 102 Ohio App.3d 758, 767. Moreover, plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions. State v. Waddell (1996), 75 Ohio St.3d 163, 166. Notice of plain error is to be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.State v. Phillips (1995), 74 Ohio St.3d 72, 83; State v. Ospina (1992),81 Ohio App.3d 644, 647.
 {¶ 18} Fugate's testimony that Donahue "died that night" was offered to explain to the jury that she did not see Donahue again after he left the Club with Owens. Furthermore, it was offered to explain why Donahue was unavailable to testify regarding the burglary at his apartment. Fugate did not give any details surrounding Donahue's death.
 {¶ 19} Additionally, Detective Viduya's testimony regarding an investigator involved in appellant's "current case" in no way suggests that a homicide case or any other case for that matter, was pending against appellant. It was offered to show why Detective Viduya asked for appellant's consent for a DNA sample, as the detective in charge of appellant's case was not available. We find that the trial court did not commit plain error in permitting the prosecution to elicit the testimony from Detective Viduya and Fugate.
 {¶ 20} Furthermore, after reviewing the testimony of Detective Dailey, which appellant's counsel did object to, this court concludes that the trial court did not abuse its discretion in overruling the objection and admitting the testimony. Detective Dailey's testimony was based solely on her involvement with the stolen cars investigation. In overruling appellant's objection, the trial court noted that it was not allowing any facts to enter surrounding the circumstances of the homicide, but since all the circumstances of January 25 and January 26, 2002 were tied together, there was no way to get around mentioning the homicide. (Tr. 98-99.) Detective Dailey's mere mention of the words "homicide investigation" in itself was not enough to prejudice appellant's case. Appellant had not been accused or indicted for the murder of Donahue. Accordingly, appellant's first assignment of error lacks merit and is not well-taken.
 {¶ 21} In his second assignment of error, appellant argues that the trial court erred by communicating with the jury on two separate occasions without first consulting with the State and appellant. Appellant maintains that the trial court's actions violated his right to a fair trial.
 {¶ 22} After the jury began its deliberations, it submitted one question to the judge, which read, "What happens if we cannot come to consensus on one count in the indictment?" (Tr. 333.) The trial court was unclear as to the meaning of the question. Therefore, the trial judge asked the jury foreperson if he is correct in assuming that the jury had reached verdicts on all but one count of the indictment. The foreperson replied yes. The trial court notified both parties. Both the State and appellant's counsel accepted the jury's verdict and agreed to declare a mistrial on the other count. (Tr. 334.) Appellant's counsel did not raise any objections. Furthermore, appellant concedes in his brief that "no error occurred at this point because both parties agreed to accept the two counts upon which the jury had reach[ed] a verdict, and to have the court declare a mistrial on the remaining count on which the jury had not yet been able to agree." (Appellant's brief, at 17.)
 {¶ 23} Secondly, appellant contends that the trial court also committed error when the judge instructed the jury to fill out the verdict forms on the counts upon which they had reached a verdict and return all the verdict forms to the courtroom. Appellant now claims this as error after he agreed to accept the verdict and declare a hung jury on the sole remaining count. Had appellant's counsel wished to object, he could have done so on the record at that time. However, he failed to do so. Failure to object, waives all but plain error. State v. Chinn
(1999), 85 Ohio St.3d 548, 554. Finding that appellant's rights were not violated nor that the trial court committed error, we find appellant's second assignment of error is not well-taken.
 {¶ 24} Appellant's third, fourth and fifth assignment's of error are interrelated and will be addressed together. In his third and fifth assignments of error, appellant asserts an ineffective assistance of counsel claim. In the third assignment of error, appellant avers that his counsel was ineffective in failing to accept the State's offer of stipulation to refer to Donahue as deceased rather than a murder victim. In his fifth assignment of error, appellant maintains that counsel was ineffective when he failed to object to testimony that appellant had requested an attorney at the time he was being questioned by the detectives. Appellant further argues, in his fourth assignment of error, that the trial court erred in allowing the State to introduce this evidence of appellant requesting an attorney.
 {¶ 25} In order to prevail on his claim of ineffective assistance of counsel under Strickland v. Washington (1984), 466 U.S. 668, 686,104 S.Ct. 2052, appellant must show that "counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance." State v. Reynolds (1998), 80 Ohio St.3d 670, 674. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, at 686. Thus, a two-part test is necessary to examine such claims. First, appellant must show that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably. State v. Keith (1997), 79 Ohio St.3d 514, 534. Second, appellant must show that but for the counsel's errors, there is a reasonable probability that the results of the trial would be different. Id.
 {¶ 26} The burden of showing ineffective assistance of counsel is on the defendant. State v. Smith (1985), 17 Ohio St.3d 98. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v. Sallie (1998),81 Ohio St.3d 673, 675. Tactical or strategic trial decisions, even if ultimately unsuccessful, do not generally constitute ineffective assistance. State v. Carter (1995), 72 Ohio St.3d 545, 558 ("Judicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from secondguessing the strategic decisions of trial counsel"); State v. Carpenter (1996), 116 Ohio App.3d 615, 626
(court of appeals is to "presume that a broad range of choices, perhaps even disastrous ones, are made on the basis of tactical decisions and do not constitute ineffective assistance"). Applying these standards, we find that appellant has failed to show that his counsel was ineffective.
 {¶ 27} First, appellant argues that his counsel was ineffective in failing to accept the State's stipulation to refer to Donahue as deceased and not as a homicide victim. However, a careful review of the transcripts reveal that counsel did in fact make that stipulation:
MR. SETTINA: I think what we just stipulated to there, Your Honor, we'll stipulate in order to resolve this issue we'll stipulate * * * we won't object to the State making any reference to Mr. Donahue being deceased, but we'll object to any reference to a murder.
(Tr. 24.)
 {¶ 28} When the mention of a homicide came up during testimony, appellant's counsel did object. (Tr. 96-99.) Appellant has failed to show how his counsel was ineffective.
 {¶ 29} Secondly, appellant argues that his counsel was ineffective in failing to object to Detective Viduya's testimony that appellant requested to speak to an attorney:
Q. Detective, why did you execute this consent to search without a warrant?
A. [Appellant] was picked up by patrol officers and brought into the Detective Bureau. At that time he requested to speak to an attorney and the investigator in charge of his current case was not on duty at the time, but it was known that she needed a DNA sample from him, so I asked him would he consent to a DNA sample without a search warrant being executed, and he consented. (Tr. 236-237.)
 {¶ 30} In failing to object to this testimony, appellant waived all but plain error. In determining whether the State's conduct and the admission of appellant's request for an attorney was harmless, we must consider the extent of the comments, whether an inference of guilt from the silence was stressed to the jury, and the extent of the remaining evidence suggesting appellant's guilt. See State v. Gooden, Cuyahoga App. No. 82621, 2004-Ohio-2699, ¶ 55, citing State v. Thomas, Hamilton App. No. C-010724, 2002-Ohio-7333.
 {¶ 31} A review of Detective Viduya's testimony reveals that this was an isolated remark. The State was inquiring into the detective's investigation of the case. The State did not inquire further as to appellant's motive or intentions for wanting to consult with an attorney. There is no evidence that the State was attempting to imply or infer guilt. Mere mention of appellant's request to speak with an attorney is either not error or only harmless error. See State v. Foth (Aug. 15, 1996), Franklin App. No. 95APA12-1621, citing State v. Marshall (1991),586 A.2d 85, 147-149 (mere mention of appellant's consultation with an attorney is not error or is only harmless error). Furthermore, the remaining evidence presented against appellant overwhelmingly proves his guilt. For the foregoing reasons, appellant's third, fourth, and fifth assignments of error lack merit and are not well-taken.
 {¶ 32} In his sixth and final assignment of error, appellant argues that the trial court erred by overruling his Crim.R. 29(A) motion of acquittal on the burglary charge. When a trial court's Crim.R. 29(A) ruling is questioned on appeal, the reviewing court is asked to determine whether the State's evidence, if believed, was sufficient to establish beyond a reasonable doubt that appellant was guilty. State v. Hauenstein
(1997), 121 Ohio App.3d 511.
 {¶ 33} Sufficiency of the evidence is the legal standard applied to determine whether the case should have gone to the jury. State v.Thompkins (1997), 78 Ohio St.3d 380, 386. In other words, sufficiency tests the adequacy of the evidence and asks whether the evidence introduced at trial is legally sufficient as a matter of law to support a verdict. Id. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, syllabus paragraph two, following Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact. Jenks, at 273. If the court determines that the evidence is insufficient as a matter of law, a judgment of acquittal must be entered for the defendant. See Thompkins, at 387.
 {¶ 34} In this case, appellant was convicted on one count of burglary, in violation of R.C. 2911.12(A)(1), which provides:
(A) No person, by force, stealth, or deception, shall do any of the following:
(1) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense[.]
 {¶ 35} The evidence adduced at trial established that appellant admitted to Farley that he burglarized Donahue's apartment. Farley testified that appellant told him that he, Newsome, and Owens broke into Donahue's apartment and took a television, money, cocaine, and speakers. Appellant also admitted to Farley that he cut his finger and used a towel in Donahue's apartment. Furthermore, appellant's blood evidence was found in Donahue's apartment on the towel left behind and in Donahue's bedroom closet. Upon a review of the evidence in a light most favorable to the State, we find that a rational trier of fact could have found the elements of burglary were proven beyond a reasonable doubt. As such, appellant's sixth assignment of error is not well-taken.
 {¶ 36} For the foregoing reasons, appellant's first, second, third, fourth, fifth, and sixth assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Sadler and French, JJ., concur.
[1] On the evening of January 25 or early morning hours of January 26, Donahue died. Currently, there is an ongoing murder investigation into his death.